Leonard W. Williamson, OSB # 910020
LEONARD WARREN WILLIAMSON PC
1900 Hines St SE Ste 211
Salem OR 97302
503 365-8800
l.williamson@williamsonlawpc.com
Attorney for Plaintiffs

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

EUGENE DIVISION

| | |
|---|---|
| CYNTHIA LADD; GUN OWNERS OF AMERICA, INC.; and GUN OWNERS FOUNDATION,<br><br>Plaintiffs,<br><br>v.<br><br>NICK HUNTER, in his official capacity as Sheriff of Marion County, Oregon; and CITY OF SALEM, an Oregon Municipal Corporation,<br><br>Defendants. | Case No.: 6:26-cv-01883<br><br>**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**<br><br>FRCP 5.1 NOTICE OF CONSTITUTIONAL QUESTION |

COMES NOW Cynthia Ladd, Gun Owners of America, Inc., and Gun Owners Foundation ("Plaintiffs"), by and through undersigned counsel, and allege as follows:

1. This case involves a challenge to the State of Oregon's refusal to allow most Americans to exercise their enumerated constitutional right to "keep and bear Arms" while in Oregon.

/ / /

2. In *District of Columbia v. Heller*, 554 U.S. 570, 581 (2008), the Supreme Court explained that the Second Amendment right "is exercised individually and belongs to all Americans." And in *N.Y. State Rifle & Pistol Ass'n v. Bruen*, 597 U.S. 1, 33 (2022), the Court unambiguously held that this "guarantee[]" includes "a right to 'bear' arms in public for self-defense."

3. In direct contravention of those clear holdings, Oregon law provides no avenue for "all Americans" – specifically, those who are not residents of Oregon or residents of a contiguous state – to carry a concealed handgun at all. Meanwhile, Oregon law permits localities to ban the open carry of firearms, the result of which is a total nonresident carry ban in much of the state.

4. First, Oregon bans the concealed carry of a firearm without a permit, but does not recognize any other state's permit to carry a concealed handgun. Thus, if an American wishes to carry a concealed firearm in Oregon, they first must obtain an Oregon Concealed Handgun License ("CHL"). An American citizen with, for example, a Texas License to Carry, cannot travel to Oregon and carry a concealed firearm with the Texas license.

5. Second, Oregon law generally conditions issuance of an Oregon CHL on residency within Oregon. To that end, Or. Rev. Stat. Ann. § 166.291(1)(c) requires that an applicant for an Oregon CHL be "a resident of the county" where they apply. The statute then provides that the "residency requirement in subsection (1)(c)" may be "waive[d]" by a county sheriff only "for a resident of a contiguous state who has a compelling business interest or other legitimate demonstrated need." *Id.* § 166.291(8). Thus, an individual who lives outside Oregon and in a noncontiguous state such as Arizona, like Plaintiff Ladd, is statutorily ineligible to apply for an Oregon CHL, and therefore cannot carry a concealed firearm while in Oregon.

6. Third, although Oregon law in theory allows unlicensed *open* carry of handguns, providing that "[f]irearms carried openly in belt holsters are not concealed" (Or. Rev. Stat. Ann.

§ 166.250(3)), this provision does not allow nonresident public carry in practice. Rather, Oregon law allows “a city or county” to “adopt ordinances to regulate, restrict or prohibit the possession of loaded firearms in public places,” excepting those “licensed to carry a concealed handgun.” Or. Rev. Stat. Ann. §§ 166.173(1), (2)(c). Many Oregon localities have capitalized on that opportunity and have banned open carry, the only otherwise-available avenue for nonresidents to exercise their Second Amendment rights in public.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

7. For example, the cities of Portland,[1] Beaverton,[2] Tigard,[3] Oregon City,[4] Salem,[5] Independence,[6] Gladstone,[7] Newport,[8] Astoria,[9] Yachats,[10] and McMinnville,[11] as well as Multnomah County,[12] do not allow openly carried firearms.

8. The result is that, for individuals without (and statutorily unable to obtain) an Oregon CHL, the "general right to public carry" (*Bruen*, 597 U.S. at 33) has been extinguished

---

[1] *See 14A.60.010(A) Possession of a Loaded Firearm in a Public Place*, Portland, https://www.portland.gov/code/14/a60.

[2] *See 5.08.240(A) Unlawful Carrying of a Loaded Firearm*, Beaverton, https://beaverton.municipal.codes/BC/5.08.240.

[3] *See § 7.32.125(a), Carrying Loaded Firearms*, Tigard, https://ecode360.com/43651628.

[4] *See § 9.24.020(B), Carrying or Discharge of Weapons*, Oregon City, https://library.municode.com/or/oregon_city/codes/municipal_code?nodeId=TIT9PUPEMOWE_CH9.24WE_9.24.020CADIWE.

[5] *See Sec. 95.095(a), Loaded Firearms*, Salem, https://library.municode.com/or/salem/codes/code_of_ordinances?nodeId=PTIICOOR_TITVIIIOF_CH95MIOF_S95.095LOFI. Violation is a misdemeanor. *See id.* § 95.990.

[6] *See Sec. 18-231, Possession of Firearms*, Independence, https://library.municode.com/or/independence/codes/code_of_ordinances?nodeId=PTIICOOR_CH18MIOF_ARTVIIIWEFI_S18-231POFI.

[7] *See Sec 9.70.020, Loaded Firearms Prohibited*, Gladstone, https://www.codepublishing.com/OR/Gladstone/html/Gladstone09/Gladstone0970.html. A violation of this ordinance is a Class "A" misdemeanor. *See id.* § 9.70.030.

[8] *See 8.20.005(A), Loaded Firearms and Other Weapons Prohibited*, Newport, https://library.municode.com/or/newport/codes/municipal_code?nodeId=TITVIIINUOF_CH8.20OF_8.20.005WE. Violation of this section is a "civil infraction punishable by a penalty not to exceed $1,000" with "each day's violation … constitut[ing] a separate violation." *See id.* § 8.10.145.

[9] *See 5.010 Carrying Loaded Firearm in a Public Place Unlawful*, Astoria, https://astoria.municipalcodeonline.com/book?type=ordinances#name=5.010_Carrying_Loaded_Firearm_In_A_Public_Place_Unlawful.

[10] *See § 5.06.020 Possession*, Yachats, https://ecode360.com/43628891.

[11] *See 9.44.025, Carrying Loaded Weapons Prohibited*, McMinnville, https://www.mcminnvilleoregon.gov/sites/default/files/fileattachments/ordinance/1375/ord_4992.pdf.

[12] *See § 15.064(A), Possession of Firearms*, Multnomah County, https://multco.us/file/chapter_15:_sheriff/download.

entirely in much of the State of Oregon. And specifically, the right to carry a *concealed* firearm has been extinguished statewide. For the 83.3 percent of Americans who are not residents[13] of Oregon and do not live in a contiguous state, Second Amendment rights are severely infringed. And in the above-listed cities and counties that ban possession of loaded firearms without a CHL, the Second Amendment right to bear arms is eliminated entirely.

9. No other provision of the Bill of Rights works this way. *See Heller*, 554 U.S. at 634 (rejecting Justice Breyer's opinion that the Second Amendment should be interpreted differently when "limited to an urban area," explaining that "[w]e know of no other enumerated constitutional right [that] has been subjected to [such an] approach"). In *Bruen*, the Supreme Court criticized as intolerable an argument that "would in effect exempt cities from the Second Amendment and would eviscerate the general right to publicly carry arms for self-defense...." *Bruen*, 597 U.S. at 31; *see also Wolford v. Lopez*, 146 S. Ct. 2032, 2050 (2026) ("[T]he Second Amendment has the same meaning in all parts of the United States. … Merely local attitudes can neither shrink nor inflate the meaning....").

10. Yet for nonresidents of Oregon, carrying a firearm openly in Oregon requires following a patchwork quilt of laws, wherein the right to keep and bear arms is extinguished when traveling in many of the most populated jurisdictions, and severely infringed everywhere else.

11. Other courts recently have found laws that bar state nonresidents from applying for concealed carry licenses to be unconstitutional. *See Hoffman v. Bonta*, 789 F. Supp. 3d 995, 1004 (S.D. Cal. 2025) (district court in California held that a law "barring nonresidents from applying for [concealed carry] licenses violate[d] the Constitution"); *see also Higbie v. James*, 795 F. Supp. 3d 307, 342-43 (N.D.N.Y. 2025) (citation omitted) ("Plaintiffs have the 'general right to publicly

[13] Plaintiffs use the shorthand "nonresident" to mean a person who is not a resident of Oregon and does not live in one of the contiguous States of Washington, Idaho, Nevada, or California.

carry arms for self-defense' outside the home which, during an individual's daily life, can include crossing state lines. Defendant … has not presented any reason why Plaintiffs' constitutional right to keep and bear arms should stop at the State line."); *Solinsky v. Lopez*, No. 1:26-cv-00117-JAO-RT (D. Haw. Apr. 15, 2026), ECF No. 19 (Stipulated Permanent Injunction enjoining "HRS § 134-9(a)(5) … to the extent that it prohibits non-residents of the State of Hawai'i [sic] from obtaining a license to carry a pistol or revolver and ammunition concealed on the individual's person on the basis of their residency").

12. Finally, a Massachusetts court recently opined that "[a] law-abiding resident of [one state] who is exercising his Constitutional right should not become a felon by exercising that right while he is traveling through [another state] merely because he has not obtained [that state's] license to carry.... This Court can think of no other constitutional right which a person loses simply by traveling beyond his home state's border into another state continuing to exercise that right and instantaneously becomes a felon...." *Commonwealth v. Donnell*, 2023 Mass. Super. LEXIS 666, at *8-9 (Aug. 3, 2023), *aff'd*, 252 N.E.3d 475 (Mass. 2025), *abrogated on other grounds*, *Commonwealth v. Rodriguez*, 267 N.E.3d 77, 92 n.8 (Mass. 2025).

13. This Court should hold similarly. First, this Court should find that Oregon's general ban on concealed carry for the majority of Americans, Or. Rev. Stat. Ann. § 166.291(1)(c), violates the Second and Fourteenth Amendments. Second, because the Second Amendment's text does not distinguish between open and concealed carry, instead broadly protecting the right to "bear Arms" as a general matter, this Court also should strike down Or. Rev. Stat. Ann. §§ 166.173(1), (2)(c), the Oregon statute that permits localities to ban the open carry of firearms. Alternatively, this Court should find that Plaintiffs have the right to carry firearms throughout the State of Oregon in at least some manner.

/ / /

## PARTIES

14. Plaintiff Cynthia Ladd is a natural person and a citizen of the United States and of the State of Arizona. Ms. Ladd resides in Maricopa County, Arizona. *See* Exhibit A, Declaration of Cynthia Ladd.

15. Ms. Ladd is a law-abiding person and a gun owner, and she currently holds a valid and unexpired Arizona Concealed Weapons Permit and a nonresident Utah Concealed Firearm Permit, which independently and together allow her to bear arms in public across most of the United States. Ms. Ladd regularly carries a handgun in public, in jurisdictions where she is legally able, for the purpose of lawful self-defense.

16. In addition to being a member of Plaintiff Gun Owners of America, Inc. ("GOA") and a supporter of Plaintiff Gun Owners Foundation ("GOF"), Ms. Ladd also serves as the Oregon State Director for Plaintiff GOA.

17. To that end, Ms. Ladd will be traveling to Oregon, and specifically to the City of Salem, within the next 90 days as part of her job duties as GOA's Oregon State Director. As State Director, Ms. Ladd is responsible for visiting the Capitol, speaking with legislators, attending various events, including speaking engagements and dinners, and providing information about GOA membership to individuals in Oregon. Ms. Ladd also plans to make a subsequent trip to Salem within 90 days after her initial trip, and at various intervals thereafter. During these trips, Ms. Ladd plans to visit surrounding locations, including Eugene, Oregon.

18. During these upcoming trips, Ms. Ladd wishes to exercise her Second Amendment rights and bring a handgun to publicly carry in Oregon for self-defense.

19. But under current state and local law, that will be impossible. Oregon does not recognize Ms. Ladd's Arizona and Utah permits to carry, so her only option to carry concealed would be to apply for an Oregon CHL. However, because she does not reside in Oregon or a

contiguous state, Ms. Ladd is legally ineligible for an Oregon CHL. Thus, Ms. Ladd cannot carry a concealed handgun in Oregon at all.

20. Making matters worse, the City of Salem – Ms. Ladd's intended destination within Oregon – independently prohibits the possession (and therefore the open carry) of loaded firearms by those without a "license[] to carry a concealed handgun." *See* Salem, Oregon Revised Code § 95.095(b)(3).[14]

21. In other words, Ms. Ladd cannot publicly carry a loaded handgun *at all* during her upcoming visits to Salem, whether concealed or openly.

22. Nor can Ms. Ladd carry her handgun in her rented vehicle. Oregon law separately prohibits the unlicensed possession of "a handgun that is concealed and readily accessible to the person within any vehicle." Or. Rev. Stat. Ann. § 166.250(1)(b).

23. However, if allowed to apply for an Oregon CHL, Ms. Ladd would do so immediately. And, aside from her nonresidency, Ms. Ladd would meet all the other statutory eligibility standards for issuance of an Oregon CHL under Or. Rev. Stat. Ann. § 166.291.

24. Alternatively, if allowed to use her Arizona Concealed Weapons Permit or Utah Concealed Firearm Permit to carry a concealed firearm while in Oregon, Plaintiff Ladd would do so, but cannot due to operation of Oregon law, which does not recognize the validity of her Arizona and Utah permits – or any state's permit, for that matter.

25. Finally, Ms. Ladd would carry a firearm openly in a variety of locations while visiting Oregon, including while filling up her rental vehicle with gasoline, shopping for groceries while in Salem, eating at restaurants around Salem while meeting with individuals for work, and checking in at her hotel, if permitted to do so. However, because Oregon law allows localities to

---

[14] https://library.municode.com/or/salem/codes/code_of_ordinances?nodeId=PTIICOOR_TITVIIIOF_CH95MIOF_S95.095LOFI.

ban open carry, and because many have done so, including Salem, Ms. Ladd is prohibited from openly carrying when she visits Oregon.

26. In other words, but for the challenged laws, Ms. Ladd would bring, possess, and carry a concealed, loaded handgun during her stays in Oregon, for self-defense purposes. But for the challenged laws, Ms. Ladd would fly with an airline-checked firearm and then rent a vehicle and travel to and around Salem, Oregon, attending various business functions and events while carrying her firearm concealed on her person. She also would carry her firearm at times openly, and while in her rental vehicle.

27. Ms. Ladd is the kind of person discussed by the Supreme Court in its recent opinion in *Bruen* – that is, she is a typical, law-abiding American citizen with ordinary self-defense needs, who cannot be dispossessed of her right to bear arms in public for self-defense in Oregon simply due to her nonresident status.

28. While generally "a plaintiff must submit to a government policy in order to have standing to challenge that policy," *Kendrick v. Bruck*, 586 F. Supp. 3d 300, 308 (D.N.J. 2022) (citing *Jackson-Bey v. Hanslmaier*, 115 F.3d 1091, 1096 (2d Cir. 1997)), that standard does not apply when "the failure to apply formally for a benefit or opportunity will not preclude standing if application would be futile." *Ellison v. Am. Bd. of Orthopaedic Surgery*, 11 F.4th 200, 205 (3d Cir. 2021).

29. Nevertheless, Ms. Ladd has taken steps to apply for an Oregon CHL.

30. To that end, because Ms. Ladd would be traveling to Salem, Oregon, Ms. Ladd contacted the Marion County Sheriff's Office on August 14, 2026 at the phone number (503) 588-5094. The City of Salem is located within Marion County.

31. During her call, Ms. Ladd spoke with an individual who identified herself as Mariah in the Concealed Handgun License department.

32. Ms. Ladd inquired about obtaining an Oregon CHL. In response, Mariah asked Ms. Ladd if she was a resident of Marion County or Oregon more broadly. Ms. Ladd responded "no" to both questions, explaining that she was a resident of Arizona, not Oregon. Mariah then informed Ms. Ladd that Oregon does not issue nonresident permits, unless the applicant were to live "in a border county."

33. Then, Ms. Ladd called the Lane County Sheriff's Office Concealed Handgun Unit at the phone number (541) 682-3906.[15] Lane County is where Eugene, Oregon, is located, one of the places that Ms. Ladd also intends to visit.

34. When Ms. Ladd contacted the above Lane County number, an individual named Miss Lopez answered the call. Ms. Ladd told Miss Lopez that she wished to apply for an Oregon CHL, and Miss Lopez asked if she owned property in Lane County. Ms. Ladd responded that she did not own any property in Lane County. Miss Lopez then asked if Ms. Ladd was a resident of Lane County. Ms. Ladd responded that she was not. Miss Lopez then explained that Lane County does not issue nonresident permits to anyone, and that Ms. Ladd would need to find a county that bordered her state in which to apply. At that point, Miss Lopez said, the sheriff of that county would make a determination if they would issue Ms. Ladd a license.

35. Ms. Ladd then explained that she lives in Arizona. In response, Miss Lopez stated that Ms. Ladd would not be able to apply for an Oregon CHL at all, because she does not qualify. Ms. Ladd inquired, "That's it? I have no other options?" Miss Lopez responded, "Yes ma'am, you do not qualify. You have no other options."

/ / /

/ / /

---

[15] *See* https://www.lanecountyor.gov/government/county_departments/sheriff_s_office/concealed_handgun_licensing.

36. Thus, due to the operation of Oregon law, there is no avenue for Ms. Ladd to apply for and to receive an Oregon CHL, because she is not a resident of Oregon and does not live in a state that is contiguous with Oregon.

37. Plaintiff Gun Owners of America, Inc. is a California non-stock corporation with its principal place of business in Springfield, Virginia. GOA is organized and operated as a nonprofit membership organization that is exempt from federal income taxes under Section 501(c)(4) of the U.S. Internal Revenue Code. GOA was formed in 1976 to preserve and defend the Second Amendment rights of gun owners. GOA has more than two million members and supporters across the country, including within Oregon. Many of GOA's members, like Plaintiff Ladd, are law-abiding citizens of the United States, but nonresidents of Oregon or a contiguous state, who wish to apply for and receive an Oregon CHL to carry a concealed handgun while traveling to Oregon, or otherwise to have their currently issued out-of-state licenses be recognized by Oregon. GOA's members also wish to carry firearms openly throughout Oregon, but are prohibited from doing so by local law, as enabled by Oregon law. Consequently, GOA members and supporters like Plaintiff Ladd have been, are being, and will continue to be irreparably harmed by Oregon's blatantly unlawful contravention of their Second and Fourteenth Amendment rights. *See* Exhibit B, Declaration of Erich M. Pratt.

38. For example, one GOA member, John Crump, routinely travels to Portland, Oregon, to meet with work clients. Mr. Crump is a Virginia resident who holds a valid and unexpired Virginia Concealed Handgun Permit and wishes to publicly carry a handgun for self-defense while in Oregon. However, because Oregon does not recognize Virginia permits or allow residents of Virginia to apply for an Oregon CHL, Mr. Crump is unable to legally carry a concealed handgun during his visits to Oregon. Moreover, while in Portland, Mr. Crump is prohibited from openly carrying his handgun by local law, and he likewise cannot carry his handgun on his person

in his rental vehicle under Oregon law. *See* Portland, Oregon City Code § 14A.60.010; Or. Rev. Stat. Ann. § 166.250(1)(b). These conditions prevented Mr. Crump from carrying his desired handgun during his last visit to Portland in November 2025. But for these prohibitions, Mr. Crump would immediately apply and otherwise be eligible for an Oregon CHL, and he would carry concealed and openly during his visits to Portland later this year and in 2027. Likewise, if Mr. Crump's Virginia Concealed Handgun Permit were to be recognized by Oregon, he alternatively would carry in Oregon under that permit. *See* Exhibit C, Declaration of John Crump.

39. Plaintiff Gun Owners Foundation is a Virginia non-stock corporation with its principal place of business in Springfield, Virginia. GOF was formed in 1983 and is organized and operated as a nonprofit legal defense and educational foundation that is exempt from federal income taxes under Section 501(c)(3) of the U.S. Internal Revenue Code. Although not a "traditional" membership organization, GOF possesses "indicia of membership" under *Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333 (1977), for purposes of representing its supporters' interests in litigation. *See, e.g.*, *Texas v. BATFE*, 737 F. Supp. 3d 426, 438 (N.D. Tex. 2024); *Silencer Shop Found. v. BATFE*, 2026 U.S. Dist. LEXIS 174125, at *23 (N.D. Tex. Aug. 5, 2026). GOF is financially supported by gun owners across the country, including Plaintiff Ladd, GOA member John Crump, and two of its board members, as well as by contributions received from individuals through the Combined Federal Campaign. GOF supporters receive updates about GOF's activities and fund the organization's activities so that it can, *inter alia*, file litigation such as this to preserve, protect, and defend their right to keep and bear arms. GOF brings this action on behalf of its supporters, who intend and desire to exercise their Second Amendment right to publicly carry handguns openly and concealed for self-defense in Oregon, but who cannot by virtue of their Oregon nonresidency and local prohibitions against open carry. These GOF supporters would carry handguns openly and concealed in Oregon but for their reasonable fear of prosecution.

*See* Exhibit A, Declaration of Cynthia Ladd; Exhibit B, Declaration of Erich M. Pratt; Exhibit C, Declaration of John Crump.

40. Defendant Nick Hunter is the Sheriff of Marion County, Oregon. Under Oregon law, the sheriff is the "chief executive officer and conservator of the peace of the county." Or. Rev. Stat. Ann. § 206.010. The "sheriff's duty" is to "[a]rrest and commit to prison all persons who break the peace, or attempt to break it, and all persons guilty of public offenses" (*id.* § 206.010(1)), including violations of Oregon's weapons laws. Sheriff Hunter is responsible for accepting Oregon CHL applications and ultimately issuing CHLs. *See* Or. Rev. Stat. Ann. § 166.291(1). Sheriff Hunter's staff refused to allow Plaintiff Ladd to apply for a CHL because she was not a resident of Marion County or Oregon and did not live in a contiguous state. Sheriff Hunter may be served at 100 High St NE, Salem, OR 97301.

41. Defendant City of Salem is and at all times herein has been a municipal corporation in the State of Oregon. The City of Salem has banned the possession of a "loaded firearm" "while in a public place" within its jurisdiction. Salem, Oregon Revised Code § 95.095. Violation of the City's ordinance is a misdemeanor. *See id.* § 95.990. If a person were to have a "license[] to carry a concealed handgun," then this ban on possession of a loaded firearm would not apply. *See id.* § 95.095(b)(3). But, as discussed above, Plaintiffs are unable to obtain such a license.

## **JURISDICTION AND VENUE**

42. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1343, 1651, 2201, and 2202 and 42 U.S.C. §§ 1983 and 1988.

43. Venue lies in this Court pursuant to 28 U.S.C. § 1391.

/ / /

/ / /

/ / /

**STATEMENT OF FACTS**

44. The Second Amendment to the United States Constitution provides: “A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed.”

45. In its landmark decision in *District of Columbia v. Heller*, 554 U.S. 570 (2008), the Supreme Court rejected the nearly uniform opinions reached by the courts of appeals, which for years had claimed that the Second Amendment protects only a communal right of a state to maintain an organized militia. *Id.* at 581. Setting the record straight, the *Heller* Court explained that the Second Amendment recognizes, enumerates, and guarantees to *individuals* the preexisting right to keep and carry arms for self-defense and defense of others in the event of a violent confrontation. *Id.* at 592.

46. Then, in *McDonald v. City of Chicago*, 561 U.S. 742 (2010), the Court explained that the Second Amendment is fully applicable to the states through operation of the Fourteenth Amendment. *Id.* at 791.

47. Next, in *Caetano v. Massachusetts*, 577 U.S. 411 (2016), the Court reaffirmed its conclusion in *Heller* that “the Second Amendment extends, prima facie, to all instruments that constitute bearable arms, even those that were not in existence at the time of the founding,” and that this “Second Amendment right is fully applicable to the States.” *Id.* at 411 (per curiam).

48. As the Supreme Court explained in *N.Y. State Rifle & Pistol Ass’n v. Bruen*, 597 U.S. 1 (2022), the Second and Fourteenth Amendments together guarantee individual Americans not only the right to “keep” firearms in their homes, but also the right to “bear Arms,” meaning “to carry a handgun for self-defense outside the home,” free from infringement by either federal or state governments. *Id.* at 10.

/ / /

49. Finally, the Supreme Court's latest pronouncements on the Second Amendment reaffirm the textual and historical framework from *Heller* and *Bruen*. *See United States v. Rahimi*, 602 U.S. 680, 692 (2024) (explaining that *Bruen* reiterates "the appropriate analysis"); *see also id.* at 714 (Gorsuch, J., concurring) ("reinforc[ing] the focus on text, history, and tradition, following exactly the path we described in *Bruen*"); *accord United States v. Hemani*, 146 S. Ct. 1677 (2026); *Wolford*, 146 S. Ct. 2032.

50. Importantly, in addition to clearly recognizing the right of "'law-abiding, responsible citizens' … to public carry," *Bruen* also rejected outright the methodology previously used within this Circuit and other circuits to judge Second Amendment challenges. *Bruen*, 597 U.S. at 38 n.9; *see Duncan v. Becerra*, 265 F. Supp. 3d 1106, 1117 (S.D. Cal. 2017) (Prior to *Bruen*, the Ninth Circuit used "what might be called a tripartite binary test with a sliding scale and a reasonable fit. In other words, there are three different two-part tests, after which the sliding scale of scrutiny is selected.").

51. Rejecting this widespread atextual, "judge-empowering" interest-balancing approach as "one step too many," *Bruen* directed (again) the federal courts to first principles: to assess the text of the Second Amendment, informed by the historical tradition. *Bruen*, 597 U.S. at 19, 22.

52. First, the Supreme Court "decline[d] to adopt that two-part approach" used in this and other circuits, reiterating that, "[i]n keeping with *Heller*, we hold that when the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct." *Bruen*, 597 U.S. at 17.

53. Second, the Supreme Court held that, "[t]o justify [a] regulation, the government may not simply posit that the regulation promotes an important interest. Rather, the government must demonstrate that the regulation is consistent with this Nation's historical tradition of firearm

regulation. Only if a firearm regulation is consistent with this Nation's historical tradition may a court conclude that the individual's conduct falls outside the Second Amendment's 'unqualified command.'" *Bruen*, 597 U.S. at 17.

54. Third, in reviewing the historical evidence, the *Bruen* Court cabined review of relevant history to a narrow time period, because "not all history is created equal," focusing on the period around the ratification of the Second Amendment, and *perhaps* the Fourteenth Amendment, but only to the extent that it "mere[ly] confirm[s]" a Founding-era tradition. *Bruen*, 597 U.S. at 37. Indeed, the Court noted that "post-ratification" interpretations "cannot overcome or alter that text," and "we have generally assumed that the scope of the protection applicable to the Federal Government and States is pegged to the public understanding of the right when the Bill of Rights was adopted in 1791." *Id.* at 36, 37; *see also id.* at 37-60 (discussing the lack of relevant historical prohibitions on concealed carry in public); *Lara v. Comm'r Pa. State Police*, 125 F.4th 428, 441 (3d Cir. 2025) ("the constitutional right to keep and bear arms should be understood according to its public meaning in 1791"). *But see Wolford v. Lopez*, 116 F.4th 959, 980 (9th Cir. 2024) ("at least when considering the 'sensitive places' doctrine, we look to the understanding of the right to bear arms both at the time of the ratification of the Second Amendment in 1791 and at the time of the ratification of the Fourteenth Amendment in 1868"), *rev'd, remanded*, 146 S. Ct. 2032 (2026).

55. In other words, according to the Second Amendment's text, and as elucidated by the Court in *Bruen*, if a member of "the people" wishes to "keep" or "bear" a protected "Arm," then the ability to do so "shall not be infringed." Period. There are no "ifs, ands, or buts," and it does not matter (even a little bit) how important, significant, compelling, or overriding the government's interest is in infringing the right. Nor does it matter whether a government restriction "minimally" versus "severely" burdens (infringes) the Second Amendment. There are no relevant statistical studies to be consulted. There are no sociological arguments to be

considered. The ubiquitous problems of crime or the density of population do not affect the equation. The only appropriate inquiry then, according to *Bruen*, is what the "public understanding of the right to keep and bear arms" was during the ratification of the Second Amendment in 1791. *Bruen*, 597 U.S. at 46-47.

56. In addition to providing the proper methodology and focal point for historical review, the Supreme Court also has instructed as to the scope of the protected persons, conduct, and arms covered by the Second Amendment.

57. **First, the people.** *Heller* explained that, "in all six other provisions of the Constitution that mention 'the people,' the term unambiguously refers to all members of the political community, not an unspecified subset." *Heller*, 554 U.S. at 580. *Heller* cited to *United States v. Verdugo-Urquidez*, 494 U.S. 259, 265 (1990), which held that "'the people' … refers to a class of persons who are part of a national community or who have otherwise developed sufficient connection with this country to be considered part of that community." *See also Heller*, 554 U.S. at 581 (Second Amendment "is exercised individually and belongs to all Americans."). Nowhere does the Second Amendment's plain text condition the right on in-state residency.

58. **Second, the protected conduct.** In its analysis, *Heller* turned to the "substance of the right: 'to keep and bear Arms.'" *Heller*, 554 U.S. at 581. The Court explained that "[k]eep arms" was simply a common way of referring to possessing arms, for militiamen *and everyone else*." *Id.* at 583. Next, the Court instructed that the "natural meaning" of "bear arms" was "wear, bear, or carry … upon the person or in the clothing or in a pocket, for the purpose … of being armed and ready for offensive or defensive action in a case of conflict with another person." *Id.* at 584. As *Heller* made clear, nothing in the text of the Second Amendment distinguished between carrying a firearm openly or concealed. *See id.* ("upon the person or in … a pocket"). And "[a]t the time of the founding, as now, to 'bear' meant to 'carry.'" *Id.* *Bruen*, in fact, was more explicit,

explaining that the "definition of 'bear' naturally encompasses public carry." *Bruen*, 597 U.S. at 32; *see also Wolford*, 146 S. Ct. at 2043 ("does the law place any restrictions on either the 'keep[ing]' (*i.e.*, possession) or the 'bear[ing]' (*i.e.*, carrying) of arms?").

59. **Third, the protected arms.** With respect to the term "Arms," the Court explained that such term includes "any thing that a man wears for his defence, or takes into his hands, or useth in wrath to cast at or strike another," and at the Founding, "all firearms constituted 'arms.'" *Heller*, 554 U.S. at 581. Thus, because not only those items and activities in "existence in the 18th century are protected" by the Constitution, "the Second Amendment extends, prima facie, to all instruments that constitute bearable arms, even those that were not in existence at the time of the founding," *id.* at 582, and "that general definition covers modern instruments that" so much as "*facilitate* armed self-defense." *Bruen*, 597 U.S. at 28 (emphasis added); *see also Rahimi*, 602 U.S. at 691-92 ("As we explained in *Heller* … the reach of the Second Amendment is not limited only to those arms that were in existence at the founding. … Holding otherwise would be as mistaken as applying the protections of the right only to muskets and sabers."); *Wolford*, 146 S. Ct. at 2043 (defining "Arms" as "any weapon customarily used for offensive or defensive purposes").

60. The *Bruen* Court also acknowledged the inherent risk in *all* permitting schemes, noting that, "because any permitting scheme can be put toward abusive ends, we do not rule out constitutional challenges to shall-issue regimes where, for example, lengthy wait times in processing license applications or exorbitant fees <u>deny ordinary citizens their right to public carry</u>." *Bruen*, 597 U.S. at 38 n.9 (emphasis added).

61. Because Oregon law operates to deprive nonresident Americans of their Second Amendment rights, this Court's intervention is necessary to make it clear to Oregon that it is not free to thumb its nose at the text of the Second Amendment or the decisions of the Supreme Court.

To the contrary, the Second Amendment is neither a "constitutional orphan" nor a "second-class right." *Silvester v. Becerra*, 583 U.S. 1139, 1149 (2018) (Thomas, J., dissenting from denial of certiorari); *McDonald*, 561 U.S. at 780; *Bruen*, 597 U.S. at 70.

**COUNT I**
**U.S. CONST. AMENDS. II, XIV**
**RIGHT TO KEEP AND BEAR ARMS**
**42 U.S.C. § 1983**

62. The foregoing allegations are repeated and realleged as if fully set forth herein.

63. Oregon's refusal to allow nonresidents to apply for and receive a Concealed Handgun License, plus Oregon's refusal to recognize the permits issued by any other state, violates Plaintiffs' Second Amendment rights that "shall not be infringed."

64. Additionally, Oregon's law that allows localities "to regulate, restrict or prohibit the possession of loaded firearms in public places," excepting those "licensed to carry a concealed handgun," together with the ordinances of many localities which ban open carry, violates the Second Amendment.

65. Plaintiffs are or represent members of "the people" who desire to "bear" a quintessential protected "Arm" (a handgun) in public, both openly and concealed.

66. Under *Bruen*, "when the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct. To justify its regulation, the government may not simply posit that the regulation promotes an important interest. Rather, the government must demonstrate that the regulation is consistent with this Nation's historical tradition of firearm regulation." *Bruen*, 597 U.S. at 17.

67. Thus, the burden is on Defendants to prove, based on Founding-era historical tradition, that their refusal to permit 83.3 percent of Americans to keep or bear arms in Oregon somehow comports with the original public understanding of the Second Amendment.

68. However, there is no relevant historical tradition of requiring individuals to apply for a license to carry a concealed handgun prior to carrying a concealed firearm in public (much less even possessing or "keep[ing]" a firearm), and certainly no relevant historical analogues for limiting carry solely to those residents of a particular state. There is also no relevant historical tradition of governments banning the open carry of firearms.

69. Thus, the following laws violate the Second Amendment and conflict with *Bruen*'s clear teachings: Or. Rev. Stat. Ann. § 166.291(1)(c)'s requirement that the applicant be "a resident of the county" before the applicant can apply for a Concealed Handgun License; Or. Rev. Stat. Ann. § 166.291(8)'s allowance for waiver of county residency "for a resident of a contiguous state who has a compelling business interest or other legitimate demonstrated need"; Or. Rev. Stat. Ann. §§ 166.173(1), (2)(c), which allow localities to restrict the open carrying of firearms; and Salem, Oregon Revised Code § 95.095, which prohibits the carry of a loaded firearm without a CHL.

70. As such, Defendants' laws, customs, practices, and policies, reducing the Second Amendment's protection of the right to "keep and bear arms" to an inkblot, damage Plaintiffs in violation of 42 U.S.C. § 1983.

71. By infringing the Second Amendment right to bear arms in public in these ways, Oregon's laws and regulations discussed in the foregoing allegations violate the Second Amendment, which applies to Defendants by operation of the Fourteenth Amendment, both facially and as applied to Plaintiffs, and are therefore invalid.

/ / /

/ / /

/ / /

/ / /

/ / /

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs request that judgment be entered in their favor and against Defendants as follows:

1. An order declaring that Or. Rev. Stat. Ann. §§ 166.291(1)(c) and (8), and any other regulation or law that precludes the issuance of Oregon Concealed Handgun Licenses to nonresidents, violate the Second and Fourteenth Amendments to the United States Constitution and therefore are unconstitutional and unenforceable;

2. An order declaring that Or. Rev. Stat. Ann. §§ 166.173(1) and (2)(c), and any other regulation or law that allows localities to restrict the open carrying of firearms, violate the Second and Fourteenth Amendments to the United States Constitution and therefore are unconstitutional and unenforceable;

3. An order declaring that Salem, Oregon Revised Code § 95.095, Loaded Firearms, and any other ordinance, regulation, or law that prohibits the unlicensed possession of loaded firearms in Salem, Oregon, violates the Second and Fourteenth Amendments to the United States Constitution and therefore is unconstitutional and unenforceable;

4. An order declaring that Oregon must allow nonresidents to apply for and be issued an Oregon Concealed Handgun License, or that Oregon must accept all concealed carry licenses and permits issued by other states;

5. An order permanently enjoining Defendants and all other officers, agents, servants, employees, and persons under the authority of the State from refusing to accept applications from, and refusing to issue Oregon Concealed Handgun Licenses to, otherwise-eligible persons who are nonresidents of Oregon;

/ / /

/ / /

6. An order permanently enjoining enforcement of Or. Rev. Stat. Ann. §§ 166.173(1) and (2)(c), together with Defendants' ordinances, including Salem, Oregon Revised Code § 95.095, that ban the open carry of firearms within their jurisdictions;

7. Costs of suit, including attorney fees and costs pursuant to 42 U.S.C. § 1988;

8. Nominal damages; and

9. Such other and further relief as is necessary to effectuate the Court's judgment or that the Court otherwise deems just and appropriate.

Respectfully submitted,

Dated: September 11, 2026

s/ Leonard W. Williamson
Leonard W. Williamson
Oregon State Bar No. 910020
LEONARD WARREN WILLIAMSON PC
1900 Hines Street SE, Suite 211
Salem, Oregon 97302
(503) 365-8800
l.williamson@williamsonlawpc.com

Attorney for Plaintiffs

Dated: September 11, 2026

s/ Oliver M. Krawczyk
Oliver M. Krawczyk*
Pennsylvania State Bar No. 334423
AMBLER LAW OFFICES, LLC
115 South Hanover Street, Suite 100
Carlisle, PA 17013
(717) 525-5822
oliver@amblerlawoffices.com

**Pro Hac Vice* forthcoming

Attorney for Plaintiffs