Leonard W. Williamson, OSB # 910020
LEONARD WARREN WILLIAMSON PC
1900 Hines St SE Ste 211
Salem, OR 97302
(503) 365-8800
l.williamson@williamsonlawpc.com

Oliver M. Krawczyk, PA # 334423*
AMBLER LAW OFFICES, LLC
115 S Hanover St Ste 100
Carlisle, PA 17013
(717) 525-5822
oliver@amblerlawoffices.com
*Admitted Pro Hac Vice*

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

EUGENE DIVISION

CYNTHIA LADD; GUN OWNERS OF AMERICA, INC.; and GUN OWNERS FOUNDATION,

Plaintiffs,

v.

NICK HUNTER, in his official capacity as Sheriff of Marion County, Oregon; and CITY OF SALEM, an Oregon Municipal Corporation,

Defendants.

Case No.: 6:26-cv-01883-AP

**PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT AGAINST DEFENDANT HUNTER**

## LR 7-1 CERTIFICATION

Pursuant to Local Rule 7-1(a), the undersigned counsel for Plaintiffs Cynthia Ladd, Gun Owners of America, Inc., and Gun Owners Foundation certify that, in compliance with this Rule, the parties made a good-faith effort through telephone conferences with counsel for Defendant

Nick Hunter, in his official capacity as Sheriff of Marion County, Oregon, to resolve the dispute and have been unable to do so in full. The parties discussed each claim, defense, and issue that is the subject of this dispositive Motion. On November 19, 2026, Defendant Hunter advised Plaintiffs that he "supports [Plaintiffs'] request for a federal court order declaring that the prohibition on issuing a Concealed Handgun License (CHL) permit to a resident of a noncontiguous state under ORS 166.291(8) is unconstitutional." Regarding Plaintiffs' "request to strike down both ORS 166.291(1)(c) and (8)," Defendant Hunter further advised Plaintiffs that he "is not persuaded at this time that ORS 166.291(1)(c) is unconstitutional as applied to the present facts if the contiguous restriction in ORS 166.291(8) is declared unconstitutional. Sheriff Hunter continues to support [Plaintiffs'] request for a federal court order declaring that the prohibition on issuing a Concealed Handgun License (CHL) permit to a resident of a noncontiguous state under ORS 166.291(8) is unconstitutional." Accordingly, Defendant Hunter does not oppose Plaintiffs' request for relief generally, but rather differs as to the scope of relief necessary to vindicate Plaintiffs' Second and Fourteenth Amendment rights.

**MOTION**

Pursuant to Fed. R. Civ. P. 56 and Local Rule 56-1, Plaintiffs Cynthia Ladd, Gun Owners of America, Inc., and Gun Owners Foundation move the Court for an order granting partial summary judgment on Plaintiffs' 42 U.S.C. § 1983 claim for relief against Defendant Nick Hunter, in his official capacity as Sheriff of Marion County, Oregon, challenging Or. Rev. Stat. Ann. §§ 166.291(1)(c) and (8) as unconstitutional under the Second and Fourteenth Amendments to the U.S. Constitution, because there is no genuine issue of material fact and Plaintiffs are entitled to judgment as a matter of law.

In support of this Motion, pursuant to Local Rule 7-1(c), Plaintiffs rely on the accompanying Memorandum in Support and Exhibit A, as well as Plaintiffs' Complaint (ECF No. 1) and the supporting declarations of Cynthia Ladd (ECF No. 1-2), Erich M. Pratt (ECF No. 1-3), and John Crump (ECF No. 1-4) filed therewith.

Respectfully submitted,

Dated: November 20, 2026

s/ Leonard W. Williamson
Leonard W. Williamson
Oregon State Bar No. 910020
LEONARD WARREN WILLIAMSON PC
1900 Hines Street SE, Suite 211
Salem, OR 97302
(503) 365-8800
l.williamson@williamsonlawpc.com

Attorney for Plaintiffs

Dated: November 20, 2026

s/ Oliver M. Krawczyk
Oliver M. Krawczyk*
Pennsylvania State Bar No. 334423
AMBLER LAW OFFICES, LLC
115 South Hanover Street, Suite 100
Carlisle, PA 17013
(717) 525-5822
oliver@amblerlawoffices.com
**Admitted Pro Hac Vice*

Attorney for Plaintiffs

Leonard W. Williamson, OSB # 910020
LEONARD WARREN WILLIAMSON PC
1900 Hines St SE Ste 211
Salem, OR 97302
(503) 365-8800
l.williamson@williamsonlawpc.com

Oliver M. Krawczyk, PA # 334423*
AMBLER LAW OFFICES, LLC
115 S Hanover St Ste 100
Carlisle, PA 17013
(717) 525-5822
oliver@amblerlawoffices.com
**Admitted Pro Hac Vice*

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

EUGENE DIVISION

CYNTHIA LADD; GUN OWNERS OF AMERICA, INC.; and GUN OWNERS FOUNDATION,

Plaintiffs,

v.

NICK HUNTER, in his official capacity as Sheriff of Marion County, Oregon; and CITY OF SALEM, an Oregon Municipal Corporation,

Defendants.

Case No.: 6:26-cv-01883-AP

**MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT AGAINST DEFENDANT HUNTER**

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ........ iii

INTRODUCTION ........ 1

LEGAL STANDARD ........ 5

ARGUMENT ........ 6

I. PLAINTIFFS HAVE STANDING. ........ 6

A. Plaintiffs Have Suffered Injuries-in-Fact Which Are Traceable to Defendant Hunter's Enforcement of the Challenged Statute and Redressable by This Court. ........ 6

1. Plaintiffs' Nonresident Members and Supporters Attempted or Otherwise Desire to Obtain an Oregon CHL, but Cannot Under Oregon Law. ........ 7

2. Because Defendant Hunter Is Tasked with Enforcing the Challenged Provisions, Plaintiffs' Harms Are Traceable to Him, and This Court Can Remedy Those Harms.. 11

II. DENIAL OF NONRESIDENT CITIZENS' RIGHTS TO PUBLIC CARRY VIOLATES THE SECOND AND FOURTEENTH AMENDMENTS. ........ 11

A. Oregon's Residency Requirement Violates the Second Amendment's Plain Text Without Further Analysis. ........ 12

B. Oregon's Residency Requirement Violates *Heller* Without Further Analysis. ........ 13

C. Oregon's Residency Requirement Violates *Bruen* Without Further Analysis. ........ 13

D. The Second Amendment Presumptively Protects Plaintiffs' Desired Course of Conduct. ........ 14

E. There Is No Historical Tradition of Prohibiting Nonresidents from Possessing Handguns in Public. ........ 15

F. The Historical Tradition Supports Nonresidents' Rights to Public Carry. ........ 17

CONCLUSION ........ 18

## TABLE OF AUTHORITIES

### Cases

*Ariz. All. for Retired Ams. v. Mayes*,
186 F.4th 622 (9th Cir. 2026) (en banc) ... 11

*Cal. Rifle & Pistol Ass'n v. L.A. Cnty. Sheriff's Dep't*,
745 F. Supp. 3d 1037 (C.D. Cal. 2024) ... 16

*Central Florida Nuclear Freeze Campaign v. Walsh*,
774 F.2d 1515 (11th Cir. 1985) ... 14

*Commonwealth v. Donnell*,
2023 Mass. Super. LEXIS 666 (Aug. 3, 2023),
aff'd, 252 N.E.3d 475 (Mass. 2025),
*abrogated on other grounds*, *Commonwealth v. Rodriguez*,
267 N.E.3d 77 (Mass. 2025) ... 4, 15

*Desert Outdoor Advert. v. City of Moreno Valley*,
103 F.3d 814 (9th Cir. 1996) ... 6

*District of Columbia v. Heller*,
554 U.S. 570 (2008) ... 1, 12, 13, 14

*Fla. State Conf. of NAACP Branches v. City of Daytona Beach*,
54 F. Supp. 2d 1283 (M.D. Fla. 1999) ... 14

*Fleck & Assocs. v. City of Phoenix*,
471 F.3d 1100 (9th Cir. 2006) ... 6

*Higbie v. James*,
795 F. Supp. 3d 307 (N.D.N.Y. 2025) ... 3, 16, 17

*Hoffman v. Bonta*,
789 F. Supp. 3d 995 (S.D. Cal. 2025) ... 3, 16

*Hunt v. Wash. State Apple Advert. Comm'n*,
432 U.S. 333 (1977) ... 10

*Leydon v. Town of Greenwich*,
777 A.2d 552 (Conn. 2001) ... 14

*Matthews v. City of Los Angeles*,
2025 U.S. App. LEXIS 20248 (9th Cir. Aug. 11, 2025) ... 6

*McDonald v. City of Chicago*,
561 U.S. 742 (2010) ... 1, 12

*N.Y. State Rifle & Pistol Ass'n v. Bruen*,
597 U.S. 1 (2022) .............................................. 1, 3, 5, 12, 13, 14, 15, 16, 17, 18

*Silencer Shop Found. v. BATFE*,
2026 U.S. Dist. LEXIS 174125 (N.D. Tex. Aug. 5, 2026) .............................................. 10

*Solinsky v. Lopez*,
No. 1:26-cv-00117-JAO-RT (D. Haw. Apr. 15, 2026) .............................................. 4

*Suarez v. Paris*,
741 F. Supp. 3d 237 (M.D. Pa. 2024), *appealed*, No. 24-2395 (3d Cir.) .............................................. 16

*Texas v. BATFE*,
737 F. Supp. 3d 426 (N.D. Tex. 2024) .............................................. 10

*United States v. Cabaccang*,
332 F.3d 622 (9th Cir. 2003) .............................................. 6

*United States v. Carranza*,
289 F.3d 634 (9th Cir. 2002) .............................................. 5

*United States v. Rahimi*,
602 U.S. 680 (2024) .............................................. 12

*United States v. Rangel-Portillo*, 586 F.3d 376 (5th Cir. 2009) .............................................. 18

*Warren v. Fairfax County*,
196 F.3d 186 (4th Cir. 1999) .............................................. 14

*Wash. Mut. Inc. v. United States*,
636 F.3d 1207 (9th Cir. 2011) .............................................. 5

*Wilson v. Hawaii*,
145 S. Ct. 18 (2024) .............................................. 6

*Wolford v. Lopez*,
146 S. Ct. 2032 (2026) .............................................. 1, 12, 13

**Statutes**

18 U.S.C. § 926A .............................................. 17

1831 Ind. Acts 192, § 58 (1831 Indiana) .............................................. 17

1841 Ala. Acts 148, Of Miscellaneous Offences, chap. 7, § 4 (1841 Alabama) .............................................. 17

1878 Miss. Laws 175, An Act to Prevent the Carrying of Concealed Weapons and for Other Purposes, § 1 (1878 Mississippi) .............................................. 17

26 U.S.C. § 501(c)(3) .............................................. 10

26 U.S.C. § 501(c)(4) .............................................. 9

430 Ill. Comp. Stat. Ann. 66/40(b) .......... 3

Act of Jan. 14, 1820, chap. 23 (1820 Indiana) .......... 17

An Act to Prevent Persons in This Commonwealth from Wearing Concealed Arms, Except in Certain Cases (1813) § 1 (1813 Kentucky) .......... 17

Conn. Gen. Stat. § 29-28(f) .......... 3

Haw. Rev. Stat. § 134-9(a)(5) .......... 4

Or. Rev. Stat. Ann. § 166.173 .......... 5

Or. Rev. Stat. Ann. § 166.173(1) .......... 2

Or. Rev. Stat. Ann. § 166.173(2)(c) .......... 2

Or. Rev. Stat. Ann. § 166.250(1)(a) .......... 1, 8

Or. Rev. Stat. Ann. § 166.250(1)(b) .......... 8

Or. Rev. Stat. Ann. § 166.250(3) .......... 2

Or. Rev. Stat. Ann. § 166.291 .......... 5, 8

Or. Rev. Stat. Ann. § 166.291(1) .......... 11

Or. Rev. Stat. Ann. § 166.291(1)(c) .......... 2, 6, 8, 18

Or. Rev. Stat. Ann. § 166.291(8) .......... 2, 6, 8, 14, 18

Or. Rev. Stat. Ann. § 206.010 .......... 11

Revised Statutes of Arkansas (1837) Division VIII, chap. 44, art. I, § 13 .......... 17

Salem, Oregon Revised Code § 95.095(b)(3) .......... 8

U.S. Const. amend IV .......... 18

**Rules**

Fed. R. Civ. P. 56(a) .......... 5

**Constitutional Provisions**

U.S. Const. amend. I .......... 14

U.S. Const. amend. II .......... 1, 2, 3, 4, 5, 7, 9, 10, 11, 12, 13, 14, 15, 16, 17, 18

U.S. Const. amend. XIV .......... 1, 5, 11, 12, 14

## INTRODUCTION

A United States citizen entering the State of Oregon does not leave their constitutional rights at the border, as if entering a foreign land. Indeed, the U.S. Supreme Court has repeated time and again that "incorporated Bill of Rights protections 'are all to be enforced against the States under the Fourteenth Amendment....'" *McDonald v. City of Chicago*, 561 U.S. 742, 765 (2010). The Second Amendment is no exception, as "[t]he constitutional right to bear arms in public for self-defense is not 'a second-class right, subject to an entirely different body of rules than the other Bill of Rights guarantees.'" *N.Y. State Rifle & Pistol Ass'n v. Bruen*, 597 U.S. 1, 70 (2022). In fact, "the Second Amendment has the *same meaning* in all parts of the United States. … Merely local attitudes can neither shrink nor inflate the meaning of fundamental Bill of Rights guarantees...." *Wolford v. Lopez*, 146 S. Ct. 2032, 2050 (2026) (emphasis added). Thus, because "the Second Amendment right is exercised individually and belongs to all Americans" and "not an unspecified subset" of Oregonians, *District of Columbia v. Heller*, 554 U.S. 570, 581, 580 (2008), *all Americans* enjoy the right to bear arms within Oregon, irrespective of where they reside.

In direct contravention of these principles, Oregon law has long denied nonresident American citizens the ability to apply for and receive an Oregon Concealed Handgun License ("CHL"). That statutory bar is significant, because it operates to completely deny nonresident Americans the right to publicly carry a handgun for self-defense throughout much of the State—whether concealed *or* openly.

*First*, Oregon bans the concealed carry of a handgun without a license, but does not recognize any other state's license to carry a concealed handgun. *See* Or. Rev. Stat. Ann. § 166.250(1)(a). Thus, if an American wishes to carry a concealed firearm in Oregon, they first must obtain an Oregon CHL.

*Second*, Oregon law generally conditions issuance of an Oregon CHL on residency within Oregon. To that end, Or. Rev. Stat. Ann. § 166.291(1)(c) requires that an applicant for an Oregon CHL be "a resident of the county" where they apply. The statute then provides that the "residency requirement in subsection (1)(c)" may be "waive[d]" by a county sheriff only "for a resident of a contiguous state who has a compelling business interest or other legitimate demonstrated need." *Id.* § 166.291(8). Thus, an individual who lives outside Oregon and in a noncontiguous state such as Arizona, for example, is statutorily ineligible to apply for an Oregon CHL, may not rely on another state's license while in Oregon, and therefore cannot carry a concealed firearm while in Oregon.

*Third*, although Oregon law in theory allows the unlicensed *open* carry of handguns, providing that "[f]irearms carried openly in belt holsters are not concealed" (Or. Rev. Stat. Ann. § 166.250(3)), this provision does not allow nonresidents to carry in practice. Rather, Oregon law separately allows "a city or county" to "adopt ordinances to regulate, restrict or prohibit the possession of loaded firearms in public places," excepting those "licensed to carry a concealed handgun." Or. Rev. Stat. Ann. §§ 166.173(1), (2)(c). Pursuant to those provisions, many Oregon localities, including Defendant City of Salem, have banned open carry, the only otherwise-available avenue for nonresidents to exercise their Second Amendment rights in public. But again, because nonresidents cannot obtain an Oregon CHL, they cannot carry openly under this exception.

Thus, for the 83.3 percent of Americans who are not residents of Oregon and do not live in a contiguous state,[1] the "right to keep and bear arms" in public is not just "a second-class right,"

[1] Plaintiffs use the shorthand term "nonresident" to mean a person who is not a resident of Oregon and does not live in one of the contiguous States of Washington, Idaho, Nevada, or California.

but rather is "eviscerate[d]" entirely. *Bruen*, 597 U.S. at 70, 31. No court would tolerate such treatment of any other provision of the Bill of Rights, and the Second Amendment is no exception. Indeed, the Supreme Court already rejected an argument that "would in effect exempt cities from the Second Amendment...." *Bruen*, 597 U.S. at 31. Yet for nonresidents of Oregon, any locality may bar them from enjoying the protections of the Second Amendment, irrespective of their status as American citizens enjoying full constitutional protection from coast to coast. And many Oregon localities already have. *See* Compl. ¶7, ECF No. 1. (collecting ordinances banning unlicensed open carry, and therefore all nonresident public carry, in the Cities of Portland, Beaverton, Tigard, Oregon City, Salem, Independence, Gladstone, Newport, Astoria, Yachats, and McMinnville, as well as in Multnomah County).

Unsurprisingly, Oregon's patently unconstitutional scheme represents an extreme outlier among the fifty states. For example, although Connecticut similarly refuses to recognize sister states' carry licenses, Connecticut allows all nonresidents to apply for Connecticut Pistol Permits, provided they already have a license to carry issued by another state. *See* Conn. Gen. Stat. § 29-28(f). And even though Illinois generally prohibits nonresidents from obtaining Illinois Concealed Carry Licenses, it still allows at least *some* nonresidents to apply from noncontiguous states with "substantially similar" licensing regimes. *See* 430 Ill. Comp. Stat. Ann. 66/40(b). Oregon thus is an outlier even among unconstitutional outliers.

Other courts recently have found laws that bar state nonresidents from applying for concealed carry licenses to be unconstitutional. *See Hoffman v. Bonta*, 789 F. Supp. 3d 995, 1004 (S.D. Cal. 2025) (district court in California held that a law "barring nonresidents from applying for [concealed carry] licenses violate[d] the Constitution"); *see also Higbie v. James*, 795 F. Supp. 3d 307, 342–43 (N.D.N.Y. 2025) (citation omitted) ("Plaintiffs have the 'general right to publicly

carry arms for self-defense' outside the home which, during an individual's daily life, can include crossing state lines. Defendant … has not presented any reason why Plaintiffs' constitutional right to keep and bear arms should stop at the State line."); *Solinsky v. Lopez*, No. 1:26-cv-00117-JAO-RT (D. Haw. Apr. 15, 2026), ECF No. 19 (Stipulated Permanent Injunction enjoining "HRS § 134-9(a)(5) … to the extent that it prohibits non-residents of the State of Hawai'i [sic] from obtaining a license to carry a pistol or revolver and ammunition concealed on the individual's person on the basis of their residency"). And recently in Massachusetts, a state court opined that "[a] law-abiding resident of [one state] who is exercising his Constitutional right should not become a felon by exercising that right while he is traveling through [another state] merely because he has not obtained [that state's] license to carry.... This Court can think of no other constitutional right which a person loses simply by traveling beyond his home state's border into another state continuing to exercise that right and instantaneously becomes a felon...." *Commonwealth v. Donnell*, 2023 Mass. Super. LEXIS 666, at *8–9 (Aug. 3, 2023), *aff'd*, 252 N.E.3d 475 (Mass. 2025), *abrogated on other grounds*, *Commonwealth v. Rodriguez*, 267 N.E.3d 77, 92 n.8 (Mass. 2025).

This Court should hold similarly here. Plaintiff Cynthia Ladd is a law-abiding resident of Arizona who will begin regularly visiting the City of Salem and other locations within Oregon in the immediate future. She wishes to carry a handgun for self-defense during her visits to Oregon, as is her enumerated constitutional right to do so. But by virtue of her nonresidency in Oregon or a contiguous state, Defendant Marion County Sheriff Nick Hunter was statutorily unable to issue a license to Plaintiff Ladd when she attempted to apply for an Oregon CHL in August of this year. And, by operation of Defendant City of Salem's ban on unlicensed open carry, Plaintiff Ladd has *no way* of legally exercising her Second Amendment rights when visiting the Salem area. Likewise, Plaintiffs Gun Owners of America, Inc., and Gun Owners Foundation represent

thousands of similarly situated nonresident members and supporters who wish to apply for and receive an Oregon CHL, but who are prohibited from doing so based on their nonresidency alone.

Following the filing of Plaintiffs' Complaint, Defendant Hunter filed his answer on November 13, 2026. Hunter admits and agrees that Plaintiffs' Second Amendment rights are violated by Oregon law, as Plaintiffs are unable to carry a firearm in Salem for self-defense (neither openly nor concealed) due to the combination of (i) Oregon's CHL statute (Or. Rev. Stat. Ann. § 166.291), which prohibits concealed carry without an Oregon CHL and prevents issuance of an Oregon CHL to a nonresident from a noncontiguous state, and (ii) Or. Rev. Stat. Ann. § 166.173, authorizing Salem's prohibition on the unlicensed open carrying of firearms in public. *See* Sheriff Nick Hunter's Ans. ¶¶17–18, ECF No. 17. It is therefore not disputed that the residency requirement of Or. Rev. Stat. Ann. § 166.291 violates the Second and Fourteenth Amendments to the U.S. Constitution. *See* Compl. Prayer for Relief ¶¶1, 4, 5. Plaintiffs therefore move for partial summary judgment as to that provision of Oregon law.[2]

## LEGAL STANDARD

Summary judgment "is warranted when 'there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Wash. Mut. Inc. v. United States*, 636 F.3d 1207, 1216 (9th Cir. 2011) (quoting Fed. R. Civ. P. 56(a)). The "constitutionality of a statute," and indeed the textual and historical analysis required by *Bruen*, 597 U.S. 1, is a "question of law reviewed de novo." *United States v. Carranza*, 289 F.3d 634, 643 (9th Cir. 2002). Likewise, "[t]he

[2] Because partial summary judgment, including declaratory and injunctive relief, against Oregon's nonresident concealed carry ban would remedy the harm to Plaintiffs, it would be unnecessary for the Court to reach Defendant City of Salem's separate ban on open carry. Thus, Plaintiffs move for partial summary judgment at this stage of proceedings.

construction or interpretation of a statute is a question of law...." *United States v. Cabaccang*, 332 F.3d 622, 624 (9th Cir. 2003).

## ARGUMENT

### I. PLAINTIFFS HAVE STANDING.

#### A. Plaintiffs Have Suffered Injuries-in-Fact Which Are Traceable to Defendant Hunter's Enforcement of the Challenged Statute and Redressable by This Court.

Because Article III courts have constitutional authority to decide only "Cases" or "Controversies," a plaintiff must "demonstrat[e] a sufficient personal stake in the outcome" of a case to have standing to litigate it. *Fleck & Assocs. v. City of Phoenix*, 471 F.3d 1100, 1103 (9th Cir. 2006). To that end, a plaintiff must "allege (1) a threatened or actual distinct and palpable injury to [herself]; (2) a fairly traceable causal connection between the alleged injury and the … challenged conduct; and (3) a substantial likelihood that the requested relief will redress or prevent the injury." *Id.* at 1104. As the Ninth Circuit recently explained, a plaintiff necessarily has standing to challenge the constitutionality of a "no-issue policy" for firearm licenses where "apply[ing] … before filing suit … would be futile." *Matthews v. City of Los Angeles*, 2025 U.S. App. LEXIS 20248, at *3, *2 (9th Cir. Aug. 11, 2025); *see also Desert Outdoor Advert. v. City of Moreno Valley*, 103 F.3d 814, 818 (9th Cir. 1996) (finding "standing to challenge [a] permit requirement, even though [plaintiffs] did not apply for permits, because applying for a permit would have been futile"). Indeed, "Americans need not engage in empty formalities before they can invoke their constitutional rights...." *Wilson v. Hawaii*, 145 S. Ct. 18, 18 (2024) (Thomas & Alito, JJ., respecting denial of certiorari). Even so, Plaintiff Ladd *tried* to apply for an Oregon CHL but was refused by Defendant Hunter's office, and so Plaintiffs more than satisfy the Article III standing requirement to challenge Or. Rev. Stat. Ann. §§ 166.291(1)(c) and (8) (the "Challenged Provisions").

**1. Plaintiffs' Nonresident Members and Supporters Attempted or Otherwise Desire to Obtain an Oregon CHL, but Cannot Under Oregon Law.**

Plaintiffs are and represent law-abiding American citizens who wish to lawfully carry concealed firearms for self-defense while visiting Oregon, but are statutorily ineligible to obtain Oregon CHLs by virtue of their nonresidency in Oregon or a contiguous state.

For instance, Plaintiff Cynthia Ladd is a law-abiding gun owner and resident of Maricopa County, Arizona, a noncontiguous state for purposes of the Challenged Provisions. Compl. Ex. A, Declaration of Cynthia Ladd ("Ladd Dec.") ¶¶1–2, ECF No. 1-2. She holds a valid and unexpired Arizona Concealed Weapons Permit and a nonresident Utah Concealed Firearm Permit, which independently and together allow her to bear arms in public across most of the United States. *Id.* ¶2. Plaintiff Ladd regularly carries a handgun in public, in jurisdictions where she is legally able, for the purpose of lawful self-defense. *Id.* She is a member of Plaintiff Gun Owners of America, Inc. ("GOA"), and a supporter of Plaintiff Gun Owners Foundation ("GOF"), and she serves as GOA's Oregon State Director. *Id.* ¶3.

To that end, Plaintiff Ladd intends to travel to Oregon, and specifically to the City of Salem, in the near future as part of her job duties as GOA's Oregon State Director. Ladd Dec. ¶4. As State Director, Plaintiff Ladd is responsible for visiting the Capitol, speaking with legislators, attending various events, including speaking engagements and dinners, and providing information about GOA membership to individuals in Oregon. *Id.* Plaintiff Ladd also plans to make a subsequent trip to Salem within 90 days after her initial trip, and at various intervals thereafter. *Id.* During these trips, Plaintiff Ladd plans to visit surrounding locations, including Eugene, Oregon. *Id.* And while in Oregon, Plaintiff Ladd wishes to exercise her Second Amendment rights and bring a handgun to publicly carry for self-defense. *Id.* ¶5.

But under current state and local law, that will be impossible. Oregon does not recognize Plaintiff Ladd's Arizona and Utah permits to carry, so her only option to carry concealed would be to apply for an Oregon CHL. *See* Or. Rev. Stat. Ann. § 166.250(1)(a). However, because she does not reside in Oregon or a contiguous state, Plaintiff Ladd is legally ineligible for an Oregon CHL. *See id.* §§ 166.291(1)(c) and (8). Thus, Plaintiff Ladd cannot carry a concealed handgun in Oregon at all. Making matters worse, Defendant City of Salem—one of Plaintiff Ladd's intended destinations within Oregon—independently prohibits the possession (and therefore the open carry) of loaded firearms by those without a "license[] to carry a concealed handgun." *See* Salem, Oregon Revised Code § 95.095(b)(3). In other words, Plaintiff Ladd cannot publicly carry a loaded handgun *at all* during her upcoming visits to Salem, whether concealed or openly.[3]

However, if allowed to apply for an Oregon CHL, Plaintiff Ladd would do so immediately. Ladd Dec. ¶10. And, aside from her nonresidency, Plaintiff Ladd would meet all the other statutory eligibility standards for issuance of an Oregon CHL under Or. Rev. Stat. Ann. § 166.291. Ladd Dec. ¶10. If she were issued an Oregon CHL, Plaintiff Ladd would bring, possess, and carry a concealed, loaded handgun during her stays in Oregon, for self-defense purposes. *Id.* ¶13. But for the Challenged Provisions, Plaintiff Ladd would fly with an airline-checked firearm and then rent a vehicle and travel to and around Salem, Oregon, attending various business functions and events while carrying her firearm concealed on her person. *Id.*

Despite understanding that she is statutorily ineligible for an Oregon CHL by virtue of her state of residence, Plaintiff Ladd nevertheless sought to apply for an Oregon CHL, but was prevented from doing so. Because she will be traveling to the City of Salem, Oregon, Plaintiff

[3] Nor can Plaintiff Ladd carry her handgun in her rented vehicle. Oregon law separately prohibits the unlicensed possession of "a handgun that is concealed and readily accessible to the person within any vehicle." Or. Rev. Stat. Ann. § 166.250(1)(b); *see* Ladd Dec. ¶9.

Ladd contacted the Marion County Sheriff's Office and inquired about obtaining an Oregon CHL. Ladd Dec. ¶15. However, Plaintiff Ladd was informed that Oregon does not issue nonresident licenses, unless the applicant were to live "in a border county." *Id.* ¶¶15–17. Thus, due to the operation of Oregon law, there is no avenue for Plaintiff Ladd to apply for and to receive an Oregon CHL.

The same is true for the countless members and supporters of Plaintiffs GOA and GOF who do not reside in Oregon, whose interests Plaintiffs GOA and GOF assert in a representative capacity. Plaintiff GOA is a California non-stock corporation with its principal place of business in Springfield, Virginia. Compl. Ex. B, Declaration of Erich M. Pratt ("Pratt Dec.") ¶4, ECF No. 1-3. GOA is organized and operated as a nonprofit membership organization that is exempt from federal income taxes under Section 501(c)(4) of the U.S. Internal Revenue Code. *Id.* GOA was formed in 1976 to preserve and defend the Second Amendment rights of gun owners. *Id.* GOA has more than two million members and supporters nationwide, many of whom are law-abiding citizens of the United States but nonresidents of Oregon or a contiguous state, and who wish to apply for and receive an Oregon CHL to carry a concealed handgun while traveling to Oregon. *Id.* ¶¶4, 9.

For instance, GOA member John Crump routinely travels to Portland, Oregon, to meet with work clients. Compl. Ex. C, Declaration of John Crump ("Crump Dec.") ¶¶2, 6, ECF No. 1-4. Mr. Crump is a Virginia resident who holds a valid and unexpired Virginia Concealed Handgun Permit and wishes to publicly carry a handgun for self-defense while in Oregon. *Id.* ¶¶1, 3, 5. However, because Oregon does not recognize Virginia permits or allow residents of Virginia to apply for an Oregon CHL, Mr. Crump is unable to legally carry a concealed handgun during his visits to Oregon. *Id.* ¶4. But for the Challenged Provisions, Mr. Crump would immediately apply

and otherwise be eligible for an Oregon CHL, and he would carry a concealed handgun during his visits to Oregon later this year and in 2027. *Id.* ¶¶4–6, 8, 10.

Next, Plaintiff GOF is a Virginia non-stock corporation with its principal place of business in Springfield, Virginia. Pratt Dec. ¶5. GOF was formed in 1983 and is organized and operated as a nonprofit legal defense and educational foundation that is exempt from federal income taxes under Section 501(c)(3) of the U.S. Internal Revenue Code. *Id.*; Compl ¶39. Although not a "traditional" membership organization, GOF possesses "indicia of membership" under *Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333 (1977), for purposes of representing its supporters' interests in litigation. *See, e.g.*, *Texas v. BATFE*, 737 F. Supp. 3d 426, 438 (N.D. Tex. 2024); *Silencer Shop Found. v. BATFE*, 2026 U.S. Dist. LEXIS 174125, at *23 (N.D. Tex. Aug. 5, 2026). GOF is financially supported by gun owners across the country, including Plaintiff Ladd, GOA member John Crump, and two of its board members, as well as by contributions received from individuals through the Combined Federal Campaign. Pratt Dec. ¶5–6; Ladd Dec. ¶3; Crump Dec. ¶2. GOF supporters receive updates about GOF's activities and fund the organization's activities so that it can, inter alia, file litigation such as this to preserve, protect, and defend their right to keep and bear arms. Pratt Dec. ¶6. GOF brings this action on behalf of its supporters, who intend and desire to exercise their Second Amendment right to publicly carry handguns for self-defense in Oregon, but who cannot by virtue of their Oregon nonresidency and local prohibitions against open carry. *Id.* ¶¶5–7, 9.

Finally, protection of the rights and interests advanced in this litigation is germane to Plaintiffs GOA and GOF's respective missions, which include the effort to preserve and protect the Second Amendment and the rights of Americans to keep and bear arms. Pratt Dec. ¶11. GOA and GOF routinely litigate cases throughout the country on behalf of their members and supporters,

and GOA and GOF are capable of fully and faithfully representing the interests of their members and supporters without participation by each. *Id.* Accordingly, Plaintiffs GOA and GOF have representational standing to challenge the Challenged Provisions on behalf of their members and supporters. *See Ariz. All. for Retired Ams. v. Mayes*, 186 F.4th 622, 631 n.1 (9th Cir. 2026) (en banc).

**2. Because Defendant Hunter Is Tasked with Enforcing the Challenged Provisions, Plaintiffs' Harms Are Traceable to Him, and This Court Can Remedy Those Harms.**

Defendant Nick Hunter is the Sheriff of Marion County, of which Defendant City of Salem is the county seat. Sheriff Nick Hunter's Ans. ¶11, ECF No. 17. As Sheriff, Defendant Hunter is tasked with executing and enforcing Oregon's laws, as are all Oregon Sheriffs, together with regulations governing the public carry of firearms, and the licensing thereof, in Marion County. Or. Rev. Stat. Ann. §§ 206.010, 166.291(1). Accordingly, Plaintiffs' inability to apply for Oregon CHLs is traceable to Defendant Hunter's enforcement of the Challenged Provisions. Moreover, an order from this Court declaring the Challenged Provisions unconstitutional and permanently enjoining state officials from refusing to accept applications from or issue permits to nonresidents would redress Plaintiffs' harms by allowing them to apply for and, if otherwise eligible, receive Oregon CHLs.

## II. DENIAL OF NONRESIDENT CITIZENS' RIGHTS TO PUBLIC CARRY VIOLATES THE SECOND AND FOURTEENTH AMENDMENTS.

The Second Amendment to the U.S. Constitution provides: "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. Const. amend. II. This absolutist language contains no qualification or limitation constraining who may exercise the right, which arms may be owned and carried, how they may be acquired, where the right may be exercised, or for what purposes, and it applies with equal force

against federal and state action by operation of the Fourteenth Amendment. *McDonald*, 561 U.S. at 765. Accordingly, the right presumptively belongs to "all Americans," presumptively protects "all instruments that constitute bearable arms," presumptively extends to all locations, and presumptively covers all "lawful purposes." *Heller*, 554 U.S. at 581, 582, 624; *Bruen*, 597 U.S. at 32 ("Th[e] definition of 'bear' naturally encompasses public carry."). Indeed, "[w]hen the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct" and a challenged firearm regulation is presumed unconstitutional. *Bruen*, 597 U.S. at 24. Stated differently, "any restrictions on either the 'keep[ing]' (*i.e.*, possession) or the 'bear[ing]' (*i.e.*, carrying) of arms" are "presumptively unconstitutional." *Wolford*, 146 S. Ct. at 2043, 2044. Thus, courts must "assess whether modern firearms regulations are consistent with the Second Amendment's text and historical understanding" via examination of the "principles that underpin our regulatory tradition." *Bruen,* 597 U.S. at 26; *United States v. Rahimi*, 602 U.S. 680, 692 (2024). And "[o]nly" if the government "justif[ies] its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation … may a court conclude that the individual's conduct falls outside the Second Amendment's 'unqualified command.'" *Bruen*, 597 U.S. at 24.

### A. Oregon's Residency Requirement Violates the Second Amendment's Plain Text Without Further Analysis.

At the outset, *Bruen*'s Second Amendment historical test applies when it is necessary to ascertain the original meaning of one or more of the Second Amendment's terms. *See Bruen*, 597 U.S. at 25 ("Members of this Court 'loo[k] to history for guidance.'"). Of course, if a firearm regulation simply bans the keeping or bearing of arms, such prohibition flatly contravenes the text, and no further analysis is necessary. *See Rahimi*, 602 U.S. at 711 (Gorsuch, J., concurring) ("[d]iscerning what the original meaning of the Constitution requires"). Here, Plaintiffs clearly

are "people," weapons such as handguns clearly are "Arms," and to carry such a weapon in public clearly means to "bear" it. *See Bruen*, 597 U.S. at 31–33. Oregon's total prohibition of Plaintiffs' arms-bearing therefore is at odds with the plain text itself, and no amount of historical analysis can "overcome or alter that text." *Id.* at 36; *see also id.* ("[T]o the extent later history contradicts what the text says, the text controls.").

**B. Oregon's Residency Requirement Violates *Heller* Without Further Analysis.**

Binding precedent also renders any textual and historical analysis unnecessary. *Heller* already has done the legwork, holding that "the Second Amendment right is exercised individually and belongs to all Americans," and that "handguns are the most popular weapon chosen by Americans for self-defense in the home, and a complete prohibition of their use is invalid." *Heller*, 554 U.S. at 581, 629. As described *supra*, the Challenged Provisions operate to deprive a supermajority of Americans of their rights to use handguns, and they therefore violate *Heller*'s analysis and holdings without further analysis.

**C. Oregon's Residency Requirement Violates *Bruen* Without Further Analysis.**

Additionally, *Bruen* held that "the Second Amendment guarantees an 'individual right to possess and carry weapons in case of confrontation,' … and confrontation can surely take place outside the home," thereby repudiating an argument that "would in effect exempt cities from the Second Amendment and would eviscerate the general right to publicly carry arms for self-defense...." *Bruen*, 597 U.S. at 33, 31. Indeed, if there is "no historical basis for New York to effectively declare the island of Manhattan" off-limits to firearms, *id.* at 31, there likewise is no basis for nonresidents' arms-bearing to be banned in Salem, Oregon. *See also Wolford*, 146 S. Ct. at 2050 ("the Second Amendment has the same meaning in all parts of the United States"). As described *supra*, the Challenged Provisions operate to place vast portions of Oregon off-limits to

firearms carry for some 83.3 percent of Americans, and they therefore facially violate *Bruen*'s analysis and holdings, too. The Second Amendment does not tolerate means-testing by way of a residency requirement.[4]

Likewise, Or. Rev. Stat. Ann. § 166.291(8) separately violates *Bruen* by establishing an unconstitutional "may-issue" licensing regime. That Challenged Provision provides that "[t]he county sheriff *may waive* the residency requirement"—but not *must*—if a "resident of a contiguous state … has a compelling business interest or other legitimate demonstrated need." *Id.* (emphasis added). But *Bruen* already repudiated these sorts of may-issue regimes, which "prevent 'law-abiding, responsible citizens' from exercising their Second Amendment right to public carry" by atextually and ahistorically "requiring the 'appraisal of facts, the exercise of judgment, and the formation of an opinion'…." *Bruen*, 597 U.S. at 38 n.9. Indeed, a requirement of "unique need" formed the very basis of New York's unconstitutional "proper cause" standard in *Bruen*. *Id.* at 16. Even so, Plaintiffs are not residents of a contiguous state.

**D. The Second Amendment Presumptively Protects Plaintiffs' Desired Course of Conduct.**

Should this Court proceed beyond the plain text and the Supreme Court's express holdings, and conduct a *Bruen* historical analysis, it will find that Plaintiffs' presumptive protection already was litigated in *Heller* and *Bruen*. Indeed, "[i]t is undisputed that … ordinary, law-abiding, adult

[4] In the First Amendment context, the denial of constitutional rights to nonresidents is a nonstarter. *See, e.g.*, *Warren v. Fairfax County*, 196 F.3d 186 (4th Cir. 1999) (ban on holiday display permits to nonresidents violates the First and Fourteenth Amendments); *Leydon v. Town of Greenwich*, 777 A.2d 552 (Conn. 2001) (ban on public park access to nonresidents violates the First Amendment); *Fla. State Conf. of NAACP Branches v. City of Daytona Beach*, 54 F. Supp. 2d 1283 (M.D. Fla. 1999) (bridge closures for nonresidents violate the First and Fourteenth Amendments and the Dormant Commerce Clause right to travel); *see also Central Florida Nuclear Freeze Campaign v. Walsh*, 774 F.2d 1515, 1523 (11th Cir. 1985) (rejecting "putting a premium on the enjoyment of the right of public speech and assembly on intrastate and interstate travelers").

citizens" like Plaintiffs "are part of 'the people' whom the Second Amendment protects." *Bruen*, 597 U.S. at 31–32. "Nor does any party dispute that handguns are weapons 'in common use' today for self-defense." *Id.* at 32. And with respect to Plaintiffs' desire to publicly carry, "[t]he Second Amendment's plain text … presumptively guarantees … a right to 'bear' arms in public for self-defense." *Id.* at 33. Accordingly, the Challenged Provisions' residency requirement is *presumed unconstitutional* unless and until Defendants "justify [their] regulation by demonstrating that" entirely prohibiting a supermajority of Americans from bearing arms "is consistent with the Nation's historical tradition...." *Id.* at 24. Obviously, Defendants cannot, as a number of courts already have found.

**E. There Is No Historical Tradition of Prohibiting Nonresidents from Possessing Handguns in Public.**

Recently, the Superior Court of Massachusetts had occasion to decide the constitutionality of a Massachusetts licensing law as applied to a New Hampshire resident in possession of an unlicensed firearm. In *Commonwealth v. Donnell*, 2023 Mass. Super. LEXIS 666 (Aug. 3, 2023), the court held the statute unconstitutional as applied, observing that "[t]he Commonwealth point[ed] to no historical precedent limiting the reach of one's exercise to a federal constitutional right to only within that resident's states borders." *Id.* at *5. Moreover, the court could "think of no other constitutional right which a person loses simply by traveling beyond his home state's border into another state" while "continuing to exercise that right," and "instantaneously becom[ing] a felon subject to mandatory minimum sentence of incarceration." *Id.* at *8–9.

Courts within this Circuit have come to a similar conclusion. The U.S. District Court for the Central District of California recently issued a preliminary injunction against a California law "allow[ing] only Californians to apply for CCW licenses." *Cal. Rifle & Pistol Ass'n v. L.A. Cnty.*

*Sheriff's Dep't*, 745 F. Supp. 3d 1037, 1065 (C.D. Cal. 2024).[5] Concluding that "entirely barr[ing]" nonresidents from public carry violates the Second Amendment, the court observed that "[t]he only historical analogues offered by the State … are the 20th century laws in Georgia, Oregon, and West Virginia." *Id.*; *see Bruen*, 597 U.S. at 66 n.28 ("20th-century evidence … does not provide insight into the meaning of the Second Amendment when it contradicts earlier evidence."). Likewise in *Hoffman v. Bonta*, 789 F. Supp. 3d 995 (S.D. Cal. 2025), the Southern District of California subsequently granted challengers' motion for summary judgment, finding that the provisions of California law "barring nonresidents from applying for CCW licenses violate the Constitution." *Id.* at 1004.

Recognizing similar principles, the Middle District of Pennsylvania recently granted summary judgment in favor of plaintiffs challenging a law banning the unlicensed possession of firearms in vehicles, holding that, "[u]nder *Bruen* and its progeny, Pennsylvanians must be permitted to freely transport firearms for their constitutional rights to have potency. … [T]he court cannot countenance an interpretation whereby those protections extend only as far as an individual can travel by foot." *Suarez v. Paris*, 741 F. Supp. 3d 237, 258 (M.D. Pa. 2024), *appealed*, No. 24-2395 (3d Cir.).

Finally, in *Higbie v. James*, 795 F. Supp. 3d 307 (N.D.N.Y. 2025), the Northern District of New York recently invalidated New York's ban on nonresident public-carry licensure, observing that "Plaintiffs have the 'general right to publicly carry arms for self-defense' outside the home which, during an individual's daily life, can include crossing state lines. … Defendant … has not

[5] An order implementing the preliminary injunction was entered on January 22, 2025. *See* No. 2:23-cv-10169-SPG-ADS, ECF No. 81 ("Residents of states and US territories besides California, who are: members of [Organizational Plaintiffs], and … who are not otherwise prohibited from possessing firearms under federal or California law, upon proof of such membership, are entitled under this Order to apply for a California concealed handgun license....").

presented any reason why Plaintiffs' constitutional right to keep and bear arms should stop at the State line. Because '[c]onfrontation for self-defense is certainly possible' when traveling into another state for any reason, New York cannot exclude nonresidents from exercising their constitutional right to bear arms." *Id.* at 342–43.

All told, a growing consensus of courts has concluded what text and history plainly show—nonresidents cannot be dispossessed of their Second Amendment rights. This Court should conclude the same.

**F. The Historical Tradition Supports Nonresidents' Rights to Public Carry.**

Not only is there no historical tradition (Founding era or otherwise) to support Oregon's refusal to license nonresidents to carry firearms in public, but in fact the opposite is true. From the 1600s to the modern day, laws proliferated that *exempted* nonresident visitors—or "travelers"—from local carry restrictions.[6] *See, e.g.*, *Bruen*, 597 U.S. at 47–48 (citing a 1686 East New Jersey law that protected "strangers" from local pistol restrictions); An Act to Prevent Persons in This Commonwealth from Wearing Concealed Arms, Except in Certain Cases (1813) § 1 (1813 Kentucky); Revised Statutes of Arkansas (1837) Division VIII, chap. 44, art. I, § 13; Act of Jan. 14, 1820, chap. 23 (1820 Indiana); 1831 Ind. Acts 192, § 58 (1831 Indiana); 1841 Ala. Acts 148, Of Miscellaneous Offences, chap. 7, § 4 (1841 Alabama); 1878 Miss. Laws 175, An Act to Prevent the Carrying of Concealed Weapons and for Other Purposes, § 1 (1878 Mississippi); *see also* 18 U.S.C. § 926A (1986 federal protection).[7] Certainly, Plaintiffs cannot have lesser rights than Oregonians to be armed while visiting Oregon.

---

[6] It should be noted that these bans normally applied to *concealed* weapons only, while allowing the open and unconcealed carry of pistols, residence of the firearm carrier notwithstanding.

[7] *See* attached Appendix of Historical Laws, Exhibit A.

## CONCLUSION

As the Fifth Circuit observed in a Fourth Amendment case, "[i]ndividuals do not shed their constitutional rights with the click of a seatbelt." *United States v. Rangel-Portillo*, 586 F.3d 376, 381 (5th Cir. 2009). Constitutional rights likewise do not end as the odometer clicks across the Oregon state line. This Court should confirm that, for the 83.3 percent of Americans living outside of Oregon's borders, "[t]he constitutional right to bear arms in public for self-defense is not 'a second-class right, subject to an entirely different body of rules than the other Bill of Rights guarantees.'" *Bruen*, 597 U.S. at 70. To that end, Plaintiffs request entry of declaratory and injunctive relief holding the residency requirement of Or. Rev. Stat. Ann. §§ 166.291(1)(c) and (8) unconstitutional.

Respectfully submitted,

Dated: November 20, 2026

s/ Leonard W. Williamson
Leonard W. Williamson
Oregon State Bar No. 910020
LEONARD WARREN WILLIAMSON PC
1900 Hines Street SE, Suite 211
Salem, OR 97302
(503) 365-8800
l.williamson@williamsonlawpc.com

Attorney for Plaintiffs

Dated: November 20, 2026

s/ Oliver M. Krawczyk
Oliver M. Krawczyk*
Pennsylvania State Bar No. 334423
AMBLER LAW OFFICES, LLC
115 South Hanover Street, Suite 100
Carlisle, PA 17013
(717) 525-5822
oliver@amblerlawoffices.com
**Admitted Pro Hac Vice*

Attorney for Plaintiffs